[Civ. No. 782.   Third Appellate District.—March 8, 1911.]

## P. A. JONES, A. Z. JONES, and H. M. JONES, Respondents, v. DELL GRIEVE and STEPHEN ASBILL, Appellants.

ACTION TO RESCIND AND CANCEL CONTRACT TO SELL JACK—FRAUD—MIS-
REPRESENTATION—WAIVER OF FINDINGS—SUFFICIENCY OF EVIDENCE.
In an action to rescind and cancel a contract for the sale of a jack
for fraud in misrepresenting that the jack "was a good foal-getter,"
where findings of fact were waived, and the evidence for the plain-
tiffs fully proved such fraud and misrepresentation, and the evidence
for the defendants controverted in some respects that of the plain-
tiffs, but not in all, and the trial court in rendering judgment for
the plaintiffs found in effect that their testimony was true, it is
held that this court is bound by the conclusion of fact of the trial
court, and must assume that it found every fact necessary to sup-
port the judgment which the pleadings and evidence would warrant.

ID.—PAROL PROOF OF FRAUD UNDER WRITTEN CONTRACT.—The fraud and
misrepresentation may be proved by parol evidence notwithstanding
the contract was in writing and contained no misrepresentation.

ID.—MISREPRESENTATION NOT OF MATTER OF OPINION.—The misrepre-
sentation that the jack "was a good foal-getter" was of a matter
of fact, and not a matter of opinion.

ID.—UNTRUE REPRESENTATION—MATERIALITY—MEANS OF KNOWLEDGE—
INDUCEMENT FOR PURCHASE—RELIANCE BY PLAINTIFFS.—It is held
that it satisfactorily appears that the representation of defendants
was untrue, that it was material, and was made with means of
knowledge of the potency of the jack, and as an inducement to the
plaintiffs to purchase the jack, and that plaintiffs believed the de-
fendants and relied and acted upon their representation; and that
when defendants made an unqualified and unexplained material rep-
resentation with the intent to induce plaintiffs to act, plaintiffs
had the right to assume that defendants believed their representation
to be true.

ID.—COMMISSION OF ACTUAL FRAUD—INTENT TO INDUCE CONTRACT BY
UNTRUE STATEMENT—BELIEF OF TRUTH IMMATERIAL.—Actual fraud
is committed when one, with intent to induce another to enter into
a contract, makes a positive assertion in a manner not warranted
by the information of such person, of that which is not true, even
though he believes it to be true.  A party will always be held to
make good his statement in the form in which he makes it.

APPEAL from a judgment of the Superior Court of Lake
County, and from an order denying a new trial.   M. S.
Sayre, Judge.

15 Cal. App.—36

The facts are stated in the opinion of the court.

Stephen C. Asbill, Herbert V. Keeling, A. A. Tiscornia, and James V. Kelleher, for Appellants.

C. M. Crawford, for Respondents.

CHIPMAN, P. J.—This is an action to have canceled a contract for the sale of a certain jack. The cause was tried by the court without a jury and plaintiffs had judgment, from which and from the order denying their motion for a new trial, defendants appeal.

Plaintiffs set out in their complaint a written contract, exhibit "A," dated March 26, 1908, between plaintiffs and defendants. It is signed by Chas. Asbill, who is admitted by defendants to have had full authority to represent them in the sale to any extent. It reads:

"1st: That Chas. Asbill party of the first part has this day sold to Jones Bro's & Jones parties of the 2nd part one Black Jack with white points, for the consideration of Seven Hundred Dollars, $700.00. 2nd: That said Jack shall be paid for by Jones Bro's & Jones parties of the 2nd part, in the following manner to wit: That Chas. Asbill party of the first part shall receive as payment all fees of said Jack for the season (year) of 1908. The same fees to be made in payment on said Jack. Jones Bro's & Jones further agree to pay all fees to Chas. Asbill party of the 1st part for each following season until the sum of Seven Hundred Dollars ($700.00) shall have been paid in the above manner specified. That Chas. Asbill party of the 1st part shall offer (after?) the payment of the sum of Seven Hundred Dollars, deliver into the hands of Jones Bro's and Jones a bill of sale for said Jack."

On April 5, 1908, the parties entered into another written agreement, exhibit "B," which is referred to as a modification of the contract, exhibit "A." It makes some changes in the manner of payment, but contains no new feature having any bearing upon the questions presented by the appeal.

Defendants were served with notice of rescission and offer to restore the jack to their possession, April 14, 1909, the ground being that the said agreement of April 5, 1908, "was

procured by fraud and misrepresentation, . . . that said jack was a good foal-getter, which was false." The offer being refused, the action was commenced April 30, 1909. The judgment declares the two said contracts to be void and cancels the same, upon condition that plaintiffs pay to defendants $52.50 for service of said jack less $21, costs of suit, the contracts to be canceled on such payment being made and the jack to become the property of defendants.

It is averred in the complaint that plaintiffs entered into the agreements to purchase said jack "solely for breeding purposes (serving mares), all of which was well known to defendants at the time of and prior to the time of the execution of said agreement and the said modification thereof, and that the said jack had not then, and never has had since, any value whatever, other than his value for said purposes." Then follow averments that defendants, with intent to deceive and defraud plaintiffs, at said times, falsely represented to them that said jack, was "a good foal-getter," which was untrue, which defendants well knew, and that at said times "plaintiffs believed the said false and fraudulent representations and statements of defendants to be true, and acted on them as such, and that they would not have entered into or executed the said agreement or the said modification thereof but for their belief in the truth thereof; and that plaintiffs first discovered that said representations were false and fraudulent and untrue on or about the fifteenth day of March, 1909."

The answer is a specific denial of the accusatory averments of the complaint, and it avers "the true facts to be that, at the time of the purchase by plaintiffs of said jack, the only guaranty whatsoever the defendants gave to plaintiffs was the guaranty of one F. B. Chandler, a former owner of said jack, the substance of which was verbally stated to defendants at the time, a written copy thereof being subsequently furnished to them." This guaranty is set out in the answer and reads: "I do hereby guarantee that the black jack, which I have sold to Asbill & Grieve and is about seven years old, will serve a mare and get her with foal, providing he lives and continues in good health, and is given a reasonable trial."

Plaintiff, Zeno Jones, testified: "During the month of March, 1908, myself and coplaintiffs in this action were ap-

proached at Lower Lake by Charles Asbill (brother of Stephen Asbill) with a proposition to buy a certain jack which he (Charles Asbill) then had in Lower Lake, Lake county. He told us that he would sell the jack on certain terms, and we there agreed to buy the jack as the terms were quite liberal, and a written contract for the purchase of the jack was then and there drawn up and signed by ourselves and Charles Asbill, as per exhibit 'A' attached to plaintiffs' complaint herein. At this time Charles Asbill was asked by either myself or my brother or my cousin Herbert, plaintiffs herein, as to whether the jack was a good foal-getter, and he told us that he was a good foal-getter.''

No objection was made to this testimony. The witness was then asked the following question: ''Did he, Charles Asbill, say to you at that time that he would guarantee the jack to be a good foal-getter?'' Defendants objected on the grounds that the question was incompetent, irrelevant and immaterial, and that the written contract cannot be varied by parol agreements made at the time of its execution and that no foundation has been laid for the question. The court overruled the objection and the witness answered: ''Yes, he said that he would guarantee the jack to be a good foal-getter, and I believed said representation to be true, and acted upon it as true, and would not have entered into the contract of purchase of said jack, had I not believed the said statement and representation that said jack was a good foal-getter to be true.'' The witness then testified that about two weeks later defendant, Asbill, stated to plaintiffs that he, Asbill, was not satisfied with the contract ''and wanted to draw up a new one.'' Continuing, witness testified: ''After considerable argument as to terms a new contract was drafted and entered into by Stephen Asbill and ourselves, as per exhibit 'B' attached to plaintiffs' complaint herein. Stephen Asbill at that time promised to send up a written guaranty that the jack was a good foal-getter. We purchased the jack solely for breeding purposes, which was well known to defendants at the time of the purchase; and said jack had no value whatever, except his value for breeding purposes. Said Charles Asbill, at the time the first contract was entered into, was very insistent that we should buy the jack, and finally said to us that he would make us an offer that we

could not refuse. We could not determine that said jack
was not a good foal-getter until a short time prior to our
serving notice of rescission of the agreement of sale on the
defendants. . . . We have complied with the terms of the
contract of sale on our part, in every respect. We did not
stand the jack during the season of 1909, for the reason that
we had then learned that he was of no value as a breeder.
The jack served sixteen mares during the breeding season of
1908, during which season, and (he?) was properly bred to
said mares and nine of them our own and seven belonging
to other parties, and there are now three mule colts living,
the issue of such breeding. The jack received good care and
treatment. None of the mares so bred by us to the jack were
ever bred to a jack before so far as I know. Nine of these
mares bred were mares that had colts before. We did not
breed the jack to any mares in the spring of 1909 as we did
not think that the jack had lived up to his guaranty. So,
on March 15, 1909, we sent Mr. Asbill and Mr. Grieve an
announcement of our rescission of the contract of purchase,
copies of which are annexed to our complaint and marked
exhibits 'C' and 'D.' Mares were bred to the jack during the
months of April, May and June, 1908, and ordinarily mares
will show their pregnancy within six months after they are
bred. No written guaranty was ever furnished us of the
jack by either Stephen or Charles Asbill.''

Plaintiff, Andrew Jones, testified to like effect and that the
written guaranty afterward sent was that the jack ''would
serve one mare and get her with foal,'' which was not accepted.
Also, that ''the mares kept returning to the jack after being
bred, and by the month of June, 1908, I was convinced that
the jack was no good.'' He also testified that he understood
that the jack had been purchased by the Asbills not long
before said sale, and that he had been owned by one Chandler.
Like testimony was given by witness, Herbert Jones. Wit-
ness, Turner, testified to having bred two young mares to said
jack in 1908 without results. There was other testimony that
the jack was a good ''performer'' but lacked procreative
potency. Expert testimony was also given that a ''jack that
is a good foal-getter ought to get seventy-five per cent of the
mares served with foal,'' and that ''a jack that only got three
mares out of sixteen with foal'' was not ''a good foal-getter.''

The evidence submitted by defendants controverted, in some respects, but not in all, the account of the transaction as given by plaintiffs. The trial court accepted the testimony of plaintiffs as true and so must we.

We must assume that the court found every fact necessary to support the judgment which the pleadings and evidence would warrant. Findings of fact were waived.

Defendants, in their brief, admit "that prior to entering into said contracts defendants represented to plaintiffs that said jack 'was a good foal-getter,' " but they deny "that the evidence proves this representation to be a fraudulent one." Pomeroy's Equity Jurisprudence, volume 2, section 876, is cited as setting forth the elements essential to constitute fraud: 1. Its form as a statement of fact; 2. Its purpose of inducing the other party to act; 3. Its untruth; 4. The knowledge or belief of the party making it; 5. The belief and reliance of the one to whom it is made; 6. Its materiality. We had occasion, in *Hodgkins* v. *Dunham,* 10 Cal. App. 690, to state what we understand to be the law applicable to this class of cases, and our view received the approval of the supreme court by its refusal, upon petition of defendants, to order the case heard in that court. The points involved in the present case are fully discussed in the case cited and need not be here repeated. It is there shown that the fraud could be proven "notwithstanding that the contract was in writing and the representations were not."

Recurring to the elements enumerated by Mr. Pomeroy, as noted above, we cannot agree with defendants that the representation as to the jack's potency was "but a matter of opinion." There is to a stock breeder nothing "vague" or "indefinite," nor would men "widely differ," as to the meaning of a representation that an animal "is a good foal-getter." Even lawyers, unfamiliar with the farm, or with stock-breeding, would hardly be excusable for mistaking the meaning of a vendor of a breeding animal who made such a representation. That the representation was untrue; that the plaintiffs believed the defendants and relied and acted upon it and that the fact was material, we think satisfactorily appears. The only debatable points are, Was the representation made for the purpose of inducing defendants to act and did defendants know or believe the representation to be true? We think

the evidence shows clearly enough that it was made as an inducement to defendants to purchase the jack; no other reasonable motive can be attributed to defendants in making it. Upon the other point, it appears that the defendants had owned the jack but a short time, but they knew who formerly owned the animal and they had the means of knowledge as to the jack's potency. Besides, when they made an unqualified and unexplained material representation with intent to induce plaintiffs to act, plaintiffs had the right to assume that defendants believed their representation to be true. "Actual fraud is committed when one, with intent to induce another to enter into a contract, makes a positive assertion, in a manner not warranted by the information of such person, of that which is not true, even though he believes it to be true. A party will always be held to make good his statement in the form in which he makes it." (*Muller* v. *Palmer*, 144 Cal. 305, [77 Pac. 954]; Civ. Code, sec. 1572.)

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.