[Civil No. 2813.   Filed May 7, 1929.]

[277 Pac. 68.]

THE SEASIDE NATIONAL BANK, a Corporation, Appellant, v. C. F. ALLEN, EDNA GREGG and JANE GREGG, Appellees.

See Appeal and Error, 4 C. J., sec. 2719, p. 773, n. 2, sec. 2836, p. 858, n. 3.

Bills and Notes, 8 C. J., sec. 724, p. 516, n. 27, sec. 1338, p. 1023, n. 45, sec. 1376, p. 1061, n. 61.

Trial, 38 Cyc., p. 1351, n. 6, p. 1353, n. 17, p. 1778, n. 73.

Mr. C. H. Richeson and Mr. F. L. Zimmerman, for Appellant.

Messrs. Sloan, Holton, McKesson & Scott, for Appellees.

LOCKWOOD, C. J.—C. F. Allen, Edna Gregg and Jane Gregg, hereinafter called appellees, on January 12th, 1926, entered into a contract with John P. Matthews for the purchase of a confectionery store, part

of the consideration being cash, and the balance in deferred payments, evidenced by certain notes, and entered into possession of the store and ran it until some time in November, 1926. On the twenty-third day of July, Matthews delivered to Morgan Mill & Cabinet Company, hereinafter called the company, his promissory note for $3,000, together with two notes of $3,000 each, given by appellees in pursuance of the contract of purchase above referred to, as collateral to his note. At this time the following indorsements were placed upon appellees' notes by Matthews, or at his suggestion:

"As collateral for Loan $7,225.00.
"JOHN P. MATTHEWS."

"Los Angeles, Cal. ——, 192—.
"For value received —— hereby grant and assign the within note together with all rights accrued or to accrue under the deed of trust securing the same, so far as the same relates to this note, and waive presentment, demand, notice, protest and notice of protest."

On August 9th the company borrowed $3,000 from the Seaside National Bank, a corporation, hereinafter called appellant, and pledged as collateral security for its note the Matthews note above referred to, together with the two notes executed by appellees. About the middle of November appellees came to the conclusion that they desired to abandon their contract of purchase of the confectionery business, and after some discussion with Matthews turned back the business to him, upon the agreement that the contract was to be terminated, Matthews taking the business back and returning to appellees all instruments of any kind executed by them, particularly the notes in question.

The Matthews note was not due until July 5th, 1927, and the two notes made by appellees were due respectively July 1st, 1927, and January 1st, 1928.

The company note to appellant, which was due November 7th, 1926, carried with it permission to sell the collateral attached, and on December 20th, 1926, appellant sold the Matthews note to one Bradfield, its auditor, for the sum of $25, and eight days later purchased it back from him. The record is silent as to whether or not this sale and resale expressly included appellees' notes.

In April, 1928, appellant brought this suit on the two $3,000 notes signed by appellees. The latter set up in defense the original contract, that the notes in question were given merely as evidence of the deferred payments in the contract, and that it had been terminated by mutual consent and an agreement had been made for the return of the notes and a redelivery of the business to Matthews as above, and alleged that appellant, at the time it received the notes in question, had full knowledge of the original contract. The case was tried to a jury, which returned a verdict in favor of appellees, and from the judgment on the verdict the bank has appealed.

There are four assignments of error, which we will consider as seems advisable. Two of them refer to matters of procedure, and the others go to the sufficiency of the evidence. It is admitted that, as between appellees and Matthews, the defense set up by the former would have been a good one, and it is further admitted that, if appellant had actual knowledge of the contract referred to at the time it took the company note with its accompanying collateral, or knowledge of such facts that its action in taking appellees' notes amounted to bad faith, it cannot recover in the present action.

The first assignment is that the court erred in admitting the contract of sale between Matthews and appellees, without first requiring proof that the bank had actual knowledge of it. If there was sufficient

evidence in the case to go to the jury on the question of the bank's actual knowledge, or of facts from which the jury might impute bad faith on the part of plaintiff, the contract would, of course, be admissible. The order of proof is always discretionary with the court, and if, at any time before the case went to the jury, the necessary evidence above referred to appeared, it was not error for the court to admit the contract, even though it was placed in evidence out of the ordinary and natural order. *Logia Suprema, etc.*, v. *Aguirre,* 14 Ariz. 390, 129 Pac. 503; *Independent Meat Co., etc.,* v. *Crane Co.,* 21 Ariz. 1, 184 Pac. 992. We therefore pass the determination of this question until we have examined all the evidence.

The third assignment is that the court erred in giving a certain instruction. It is the law, of course, that exception cannot be taken to isolated parts of instructions, but they must be considered as a whole in order to determine whether they were erroneous or not. *Lorden* v. *Stapp,* 21 Ariz. 646, 192 Pac. 246. We have examined the instructions carefully, and are of the opinion that the excerpt objected to, when taken into consideration with the remainder of the instruction, correctly stated the law, if, as we said before, there was evidence in the case to go to the jury on the question of knowledge or bad faith.

We come, then, to the real question on the merits: Was there sufficient evidence on the issue referred to to take the case to the jury? In passing upon this point we must, of course, consider the evidence in the light most favorable to appellees. This court has considered a very similar question in the cases of *Arnett* v. *Sanderson,* 25 Ariz. 433, 218 Pac. 986, and *Davis* v. *First National Bank of Oakland,* 26 Ariz. 621, 229 Pac. 391.

Paragraph 4201, Revised Statutes of Arizona of 1913, Civil Code, reads as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounts to bad faith."

In discussing this paragraph in *Arnett* v. *Sanderson, supra,* we said:

"Owing to the fact that it is not only difficult, but almost impossible, to prove the bad faith of the purchaser of a note by direct evidence, considerable latitude is allowed by the courts in permitting proof by circumstantial evidence of 'knowledge of such facts that his action in taking the instrument amounts to bad faith.' Under this rule, evidence of any suspicious circumstance, which tends to show that the transferee of a note knew that there was a defense to it, is admissible."

What circumstances, if any, appear in the record, which tend to show that appellant knew, or should have known, there was a defense to the notes sued on? Naoma Tompkins, vice-president of appellant bank, was questioned as follows:

"Mr. Richeson: Q. Did you ever see this sales contract, Miss Tompkins? A. Yes, sir.

"Q. When was the first time that it came into the bank's possession to your knowledge? A. When we made the loan."

If this be true, there was, of course, actual knowledge, and the court should have instructed the jury to return a verdict in favor of appellees. This testimony was given at the morning session of court; in the afternoon Miss Tompkins resumed the stand and stated that her testimony on this point was a mistake—that she had been confused as to the identity of the various exhibits presented to her, and that the truth was that the contract was not known to appellant until November, long after the notes had been received. It was, of course, for the jury to determine

whether the prior or latter testimony presented the true facts. It also appears from the evidence that a representative of the company visited appellees' store before accepting the Matthews note, to investigate appellees' responsibility, and was informed fully as to the nature of their contract with Matthews, and that appellant was informed by the company that it had made an investigation of appellees' standing, although it does not appear whether the detailed results of such investigation were communicated to the former.

Certain indorsements, quoted above, appeared on the back of appellees' notes. We are of the opinion that the indorsements were not of such a nature as to destroy the negotiability of the notes, by being notice that the promise to pay was conditional. *Slaughter* v. *Bank of Bisbee,* 17 Ariz. 484, 154 Pac. 1040. We think, however, that they might be taken into consideration with the contradictory testimony of Miss Tompkins, with the investigations made by the company, and the knowledge obtained by it, and the fact that these investigations were at least mentioned to appellant, as bearing on the issues of knowledge and bad faith, and that all these things together presented evidence sufficient to go to the jury upon the question as to whether the bank had actual notice of the existence of the contract of sale at the time it took the notes, or whether its action in taking them amounted to bad faith. Such being the case, the other assignments of error mentioned hereinbefore were not well taken.

The verdict of a jury as to the facts on conflicting evidence is, of course, under our well-settled rule, binding upon this court.

No error appearing in the record, the judgment is affirmed.

McALISTER and ROSS, JJ., concur.