756 P.2d 329

**Jeffrey A. WEINER and Barbara S. Weiner, husband and wife; and Merton B. Weiner and Jean Weiner, husband and wife, Plaintiffs/Appellees/Cross–Appellants,**

v.

**Steven Perry ASH and Christine L. Ash, husband and wife, Defendants/Appellants/Cross–Appellees.**

No. 2 CA–CV 87–0195.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 21, 1988.

Reconsideration Denied March 7, 1988.

Petition and Cross–Petition for Review Denied July 6, 1988.[*]

Miller & Pitt by Richard L. McAnally and Eugene N. Goldsmith, Tucson, for plaintiffs/appellees/cross-appellants.

Kimble, Gothreau, Nelson & Cannon by William Kimble and Daryl A. Audilett, Tucson, for defendants/appellants/cross-appellees.

OPINION

LIVERMORE, Presiding Judge.

Defendant Steven Ash shot and wounded plaintiff Jeffrey Weiner. Plaintiff Merton

* Feldman, V.C.J., of the Supreme Court, was recused and did not participate.

Weiner was a passenger in Jeffrey's car at the time of the shooting. Defendant was tried criminally for this assault but was found not guilty by reason of insanity. In the ensuing civil suit, Jeffrey and his wife were awarded $273,582.67, and Merton and his wife were awarded $90,123.05, for past and future medical bills, past and future pain, suffering and disability, and past emotional distress and anxiety. These sums have been paid and are not now in issue. The issues on this appeal are based on the following portions of the trial court's findings of fact and conclusions of law and the corresponding parts of the final judgment:

THE COURT MAKES THE FOLLOWING FINDINGS:

1. Paranoid schizophrenia is a major mental illness.

2. Paranoid schizophrenia has an unknown etiology.

3. Paranoid schizophrenia has no cure.

4. Paranoid schizophrenia can go into remission.

5. Remission is, by definition, transitory and temporary.

6. The defendant, Steven Ash, is suffering from paranoid schizophrenia; his paranoid schizophrenia is currently in remission or in control by psychotic drugs/therapy.

7. The defendant, Steven Ash, is currently undergoing psychotherapy which, in combination with antipsychotic medication, and strong psychological support from his wife and extended family is responsible for his current status in "remission." Defendant Steven Ash, has a past history of both schizo affective mental illness and a failure to take prescribed medication to control said mental illness.

8. The failure of a paranoid schizophrenic to continue to take prescribed antipsychotic medication is a significant risk/problem in the care, treatment, management and control of paranoid schizophrenia.

9. The defendant, Steven Ash, is currently under court order to 1) participate in psychotherapy on a regular basis; 2) take any antipsychotic medication prescribed by the treating physician, and 3) to submit to periodic, random sampling of his urine to verify that he has maintained a therapeutic level of the prescribed medication in his bloodstream.[1]

10. The psychotherapy, antipsychotic medication and the random periodic testing are both useful and necessary to maintain the defendant, Steven Ash, in remission.

11. The fact that the defendant is mandated by court order to continue psychotherapy medication and random periodic urinalysis is a significant factor in his current successful remission, and the probability of the maintenance of that successful remission in the future.

12. The defendant, Steven Ash, has no objection to the continuance of the current psychotherapy, antipsychotic medication and random periodic urinalysis in the future.

13. Defendant's attorney formally agreed after receiving the consent of his client, that this court enter an order requiring defendant Steven Ash, to continue psychotherapy, continue taking antipsychotic medication and participate in random periodic urinalysis for an indefinite period of time to determine that he has a therapeutic level of medication in his bloodstream.

14. The entry of an order mandating the defendant, Steven Ash, to continue psychotherapy and antipsychotic medication and random periodic urinalysis will have a minimal intrusive effect upon him in comparison with the harm to be prevented both to others and to the defendant himself.

IT IS HEREBY ORDERED that the defendant, Steven Ash, continue to participate in psychotherapy for his paranoid schizophrenia or schizo-affective disorder, said therapeutic sessions to be held no less than monthly with the length of the session to be determined by the best medical judgment of his physician, Dr. Robert L. Win-

1. The court-mandated treatment referred to was ordered as a condition of release after defend-

ant's acquittal by reason of insanity. It was due to expire in January 1987.

sky, or such other board certified psychiatrist to whom his care may be transferred.

IT IS FURTHER ORDERED that the defendant, Steven Ash, take any and all antipsychotic or behavior controlling medications prescribed by his treating psychiatrist and that, in addition thereto, that he undergo random periodic urinalysis at least once every thirty days to determine that he has a therapeutic level of the anti-psychotic medication in his bloodstream.

In addition, the court would like a provision that the defendant allow his treating psychiatrist to consult with Dr. Allan Biegel, or some other board certified psychiatrist nominated by plaintiffs in this action, not less than once every six months; that the defendant, Steven Ash, waive the physician-patient privilege with respect to the consultation between his treating psychiatrist and Dr. Beigel or nominee; that Dr. Beigel or his nominee be authorized to report to the plaintiffs the medical condition of the defendant, Steven Ash, without any particulars and whether or not he poses any hazard to their health, welfare or safety.

IT IS FURTHER ORDERED that judgment be entered against the defendant, Steven Ash, and in favor of the plaintiffs, in the amount of $250,000.00 for future emotional distress and anxiety; however, said sum to be payable if, and only when, the defendant fails to comply with any of the court's orders concerning his medical care, medication and drug testing or his refusal for any reason to allow the reports to plaintiffs called for and contemplated by these orders.

(As opposed to the actual entry of judgment, perhaps it would be better or at least more practical that the defendant's carriers post a bond in that amount. In any event, it is the intention of the court to alleviate any reasonable basis for future mental distress on the one hand and to assess damages for it, only if necessary, on the other hand.)

Plaintiffs have requested damages for loss of profits on an investment potential.

It is reasonably certain that the incident on November 8, 1984, was the proximate cause of plaintiff's not investing for approximately six to eight months from the date of the shooting at an absolute minimum.

Plaintiffs area of expertise on investment was raw land. It is not referred to as land speculation without good reason.

The variables encompassed within the real estate investment/speculation field are so multiplicitous that it is impossible to predict with any probability if plaintiffs would have made a profitable investment in raw land.

Investment in raw land as a business for profit has nothing to do with any change in the intrinsic value of the land itself, but much to do with roads, zoning, development, interest rates, purchases/sale terms, carrying charges, length of time from purchase to sale, the fluctuations in both the local and national economy, market strategy and the fluctuations in both the local and national economy, marketing strategy, etc.

The animal spirit—the willingness to take the risk of investment—was lost to these plaintiffs for at least six to eight months as a proximate result of defendant's acts. Nevertheless, this probability of success has not been proved to either a reasonable certainty or a reasonable probability.

The Court declines to award damages for loss of profits or "investment potential."
In this appeal defendant questions the propriety of the conditional award of future damages. On cross-appeal, plaintiff contests the failure to award lost income from land speculation. We have jurisdiction under A.R.S. § 12–2101(B), (D), (F), (G). We affirm in part and reverse in part.

■ Our initial problem arises in seeking to characterize what it is the trial judge did. By its terms it appears to be an award of damages for future emotional distress and anxiety arising from the shooting. There is ample evidence of continuing fear by the plaintiffs that defendant, if he stops taking his medication, will again suffer a paranoid delusion about plaintiffs and will

again seek to kill them. But it is also clear from the findings that in the trial judge's view no compensable future damage will occur if defendant does not again deteriorate mentally. The judgment, therefore, cannot be affirmed on the basis that it is an actual award of compensation for probable future damages.

It may also be that the trial judge was seeking to maintain jurisdiction so as to be able to award future damages should they occur. That seems the likely meaning of his intention to "assess damages for [future mental distress], only if necessary." While this is an understandable goal, we know of no authority for leaving a case open to see if further damages develop.

■ Finally, it may be that the trial court was trying to coerce defendant's future conduct so as to prevent any future harm to plaintiffs. This appears from the stated intention to "alleviate any reasonable basis for future mental distress." Our problem with this is that we know of no authority to compel another to behave in such a way as to please third parties when the behavior foregone is neither criminal nor tortious in itself. It may be better that defendant continue to undergo psychiatric treatment but courts are not generally empowered to compel people to follow the better course. The legislature has enacted specific provisions, with specific safeguards, for court ordered treatment of the mentally ill. See A.R.S. §§ 36–533 to 36–544. That legislative action leaves no room for superior courts to mandate treatment either independently or as a pendent remedy to some related case within the court's jurisdiction.[2] Having no authority to compel such treatment, the court equally had no authority to require the posting of a bond to insure defendant's performance of that which was ordered.

■ The cross-appeal contends that the trial court erred in refusing to make an award of damages for lost profits from real estate speculation for the six to eight months after the shooting when the plaintiffs were indisposed to return to business. We have examined the testimony of the plaintiffs and their expert, a University of Arizona economist. Essentially the proof was that plaintiffs had made several advantageous real estate transactions before the shooting, that several other people had made advantageous transactions in the months after the shooting, and that plaintiffs had the resources to have made similar transactions had they been disposed to do so. From this the trial judge was invited to infer that they would have entered transactions which would have resulted in profits "ranging anywhere from 9.75 to well over nineteen million dollars." We agree with the trial court that this is sheer speculation and insufficient to support any award of damages. We do not believe that bringing in a list of profitable deals made during the period in question by other people, even when vouched for by a hired economist, is any proof that those are the transactions into which plaintiffs would have entered. They certainly did not so testify. They did testify to one opportunity foregone but they offered no proof as to its profitability. Further there was evidence, of that which is self-evident, that not all land transactions are profitable. In these circumstances, the trial court did not err in finding insufficient evidence to support an award of damages.

The conditional award of $250,000 for future emotional distress and anxiety is reversed as is the order for defendant to undergo psychotherapy, to take medication, and to undergo urinalysis. The matter is remanded for an award of presently proven future damages. In all other respects the judgment is affirmed.

ROLL and HATHAWAY, JJ., concur.

---

2. We note that the defendant consented to this court-ordered treatment. We have doubts as to the voluntariness of the consent when facing an alternative money judgment. In any event, defendant could not by his consent confer jurisdiction on the court to enter such an order.