762 P.2d 1341

Danya L. WRIGHT, Plaintiff–Appellant,
Cross–Appellee,

v.

Bobby Allen MAYBERRY and Sandra Lee Mayberry, husband and wife, Defendants–Appellees, Cross–Appellants.

No. 1 CA–CIV 9462.

Court of Appeals of Arizona,
Division 1, Department A.

May 26, 1988.

Review Denied Nov. 8, 1988.

Lawrence J. Marks, Phoenix, for plaintiff-appellant, cross-appellee.

McGroder, Tryon, Heller & Rayes, P.C. by G. Michael Tryon, Phoenix, for defendants-appellees, cross-appellants.

## OPINION

HAIRE, Chief Judge.

We consider whether the trial court erred in finding that the jury intended a partially contingent verdict and in reducing the award of damages by striking the contingent amount.

## BACKGROUND

As a result of a car accident involving Danya Wright (Wright) and Bobby Mayberry (Mayberry), Wright suffered cartilage and ligament damage in her knee. She sued Mayberry alleging that Mayberry was negligent. In defending, Mayberry contended that Wright was contributorily negligent.

Wright's physician, Dr. David Rand, testified that he had performed arthroscopic surgery to repair cartilage in Wright's knee. Explaining why he had not also repaired the ligament at that time, Dr. Rand testified that he had hoped that it would heal on its own and that surgical repairs are not always successful. Dr. Rand recommended further surgery to strengthen the knee, but was uncertain about whether that surgery would include an attempt to repair the ligament. He further testified that as an alternative to surgical repair of the ligament, or if such surgery were to fail, Wright could wear a brace.

During the jury's deliberations, the foreman sent a note to the trial judge asking, "Can future surgery [sic] be awarded to Plaintiff contingent upon surgery actually being performed[?]" The trial judge discussed the note with counsel and replied to the foreman, "The Court cannot give you

any new instruction. Please apply all the instructions previously given to you." In its verdict, the jury found that Mayberry was negligent, that Wright's damages totaled $87,000, that Wright's own negligence was a contributing cause of her injury, and that the negligence was attributable 75% to Mayberry and 25% to Wright. Applying these percentages to the total amount of Wright's damages, the jury awarded Wright $65,250, adding in a parenthetical note that $21,250 was to be paid upon completion of knee surgery:

"Question No. 6. Using the above percentages and applying these percentages to the damages you have found in answer to Question No. 2, the amount to be awarded to the plaintiff is $65250 (1). (1) ($21250 is to be paid upon completion of knee surgery)"

Both counsel were present when the jury returned this verdict, and neither objected to the parenthetical note. However, when Wright filed a proposed form of judgment in the amount of $65,250, omitting any reference to the note, Mayberry filed, first, an objection to the form of judgment, and later, a motion for new trial, remittitur, or judgment notwithstanding the verdict. Mayberry argued that the parenthetical note indicated that payment of $21,250 was contingent upon completion of future knee surgery and that the "only available remedy" was to order a new trial. Alternatively, he suggested that the award be remitted to $44,000. As additional grounds for a new trial, Mayberry complained that, during closing argument, Wright's counsel had stated his personal opinions about the credibility of witnesses and the justness of Wright's cause.

Recognizing in hindsight that the jury should have been instructed that its verdict should not, in whole or part, be based on a future contingency, the trial court identified its task as "to ascertain the jury's intent and to give effect to that intent." The court then suggested two probable explanations for the parenthetical note: either the jury was not convinced that Wright would undergo surgery because she had not adequately proved that it was needed, or the jury was acting paternalistically in attempting to ensure that Wright would have the money for the surgery by keeping it for her until the surgery had actually been performed.

The trial court found that the former explanation most probably reflected the jury's intent and reduced the award to $44,000. The remainder of Mayberry's motions were denied.

## DISCUSSION

Wright has appealed from the trial court's reduction of the jury's verdict, and Mayberry has cross-appealed from the trial court's denial of his motion for new trial based on misconduct by Wright's counsel.

### Wright's Appeal: Trial Court's Reduction of Verdict

As a general rule, a judgment may not be conditioned upon a contingency. *Peterson v. Overson*, 52 Ariz. 203, 205, 79 P.2d 958, 959 (1938). A trial court may, however, reform a manifestly defective verdict if the jury's intent can be ascertained with certainty:

" 'Generally, the court has the power to put a manifestly irregular or defective verdict in such form as to make it conform to the intention of the jury, and carry their findings into effect, where the intention can be ascertained with certainty.' " *Southern Pacific Railroad Co. v. Mitchell*, 80 Ariz. 50, 66, 292 P.2d 827, 837 (1956) (quoting 89 C.J.S. Trial § 515 (1955)).

In this case, the trial court found that the jury intended part of its award to be contingent upon the actual performance of surgery and reformed the verdict by striking the portion of the award that was based on the contingency.

Wright contends that the award was not manifestly based on a future contingency because the note in the verdict did not state that the $21,250 should be paid only if additional surgery were performed, nor did it identify any particular surgery. Further, she asserts, the jury did not intend its parenthetical note to create a *condition* of payment, but merely to designate a *time* of

payment or to explain how it had arrived at its verdict. She argues that any such designation or explanation was surplusage and should have been disregarded. *See Barrow v. Talbott,* 417 N.E.2d 917, 921 (Ind. App.1981) (jury awarded $80,000, noting "$75,000 for suffering and aggrieved condition of Miss Talbott; $5,000 for future medical services").

Wright also maintains that if the jury's verdict was reasonably subject to any construction that would render the parenthetical note surplusage, then the trial court should have so construed it in order to uphold the verdict. *See Boynton v. Fox Denver Theaters, Inc.,* 121 Colo. 227, 214 P.2d 793 (1950) (where jury found for the defendant, adding "unavoidable," verdict would not be construed to indicate that jury had failed to consider court's instructions as a whole).

█ We do not believe that the jury's intent could be more clearly expressed. Based on the parenthetical note in the verdict, the foreman's note to the trial court, and Dr. Rand's testimony concerning the uncertainties of ligament surgery, we are convinced that the trial court correctly concluded that the jury intended its award of $21,250 to be contingent upon the completion of future surgery.

█ Wright next suggests that the rule cited in *Peterson*—that a contingent judgment is defective—may be limited to the old system of pleading. Although we recognize that the rule is subject to exceptions, especially when, as in *Peterson,* the relief granted is equitable, we do not believe that an award of damages may be conditioned upon the occurrence of a future event.

We find support for this conclusion in a recent decision of Division 2 of this court. In *Weiner v. Ash,* 157 Ariz. 232, 756 P.2d 329 (App.1988), Division 2 reversed a judgment for damages that would have been payable only upon the defendant's failure to comply with the court's orders concerning psychiatric treatment. The contingent portion of the award would have compensated the plaintiffs for future emotional distress. In attempting to characterize the trial court's intentions, Division 2 identified three alternatives, none of which was legally supportable. First, if the judgment reflected the trial court's finding that the plaintiffs would suffer no future harm as long as the defendant remained under psychiatric care, then the judgment could not be affirmed as an actual award for probable future damages. *Id.,* at 234–235, 756 P.2d at 331–332. Furthermore, no authority could be found under which the trial court could either (a) maintain jurisdiction in order to award future damages should they occur, or (b) compel the defendant to forgo behavior that, in itself, would be neither criminal nor tortious. *Id.* at 235, 756 P.2d at 332.

Similarly, in the instant case, a judgment that incorporated the jury's contingent award of $21,250 could not be affirmed as an actual award of compensation for probable future damages. Neither could it be supported as an attempt to retain jurisdiction or as a paternalistic attempt to compel Wright to undergo further surgery.

Wright also argues that Mayberry waived his objection to the defective verdict by failing to request resubmission to the jury under Rule 49(c), Arizona Rules of Civil Procedure. Rule 49(c) provides for reformation of a defective or nonresponsive verdict:

"If the verdict is informal or defective, the court may direct it to be reformed at the bar, and where there has been a manifest miscalculation of interest, the court may direct a computation thereof at the bar, and the verdict may, if the jury assents thereto, be reformed in accordance with such computation. If the verdict is not responsive to the issue submitted to the jury, the court shall call the jurors' attention thereto, and send them back for further deliberation."

Wright analogizes waiver of objections to verdicts under Rule 49(c) to waiver of objections to jury instructions. *See MacConnell v. Maricopa County Medical Society,* 150 Ariz. 505, 724 P.2d 591 (App.1986).

Some courts have held that objections to the form of a verdict may be waived if not

made before the jury is discharged. *See generally* Annotation, *Propriety and Effect of Jury's Apportionment of Damages as Between Tortfeasors Jointly and Severally Liable*, 46 A.L.R.3d 801, 6(i) (1972). The policy underlying these decisions is to discourage jury-shopping and to promote expeditious correction of error. *Strauss v. Stratojac Corporation*, 810 F.2d 679, 683 (7th Cir.1987) (special interrogatories inconsistent with one another and with general verdict under Rule 49(b), Federal Rules of Civil Procedure).

However, the Arizona Supreme Court has held that failure to seek relief under Rule 49(c) does not necessarily result in a waiver of objections to a defective verdict. *See Banner Realty, Inc. v. Turek*, 113 Ariz. 62, 546 P.2d 798 (1976). In *Banner Realty*, the plaintiff sued to recover a $26,-000 real estate commission. The jury allocated the damages between defendants, assessing $13,000 against one defendant and $13,000 against the others. The plaintiff moved for judgment against all defendants for $26,000 notwithstanding the verdict. It had not moved for relief under Rule 49(c) before the jury was discharged. Nevertheless, our supreme court, considering its prior decision in *Southern Pacific Railroad Co.*, held that the trial court should have corrected the jury's verdict to reflect the undisputed measure of recovery. *Banner Realty*, 113 Ariz. at 64, 546 P.2d at 800. *See also Berry v. McLeod*, 124 Ariz. 346, 350, 604 P.2d 610, 614 (1979) (no waiver of right to new trial where verdicts were hopelessly inconsistent and resubmission would have been futile).

We note that in *Banner Realty*, the trial court was able to ascertain and implement the certain intent of the jury without resubmission; in *Berry*, resubmission would have been futile. Neither situation created a conflict with the policy considerations that support waiver. We would hesitate, therefore, to extend the holdings in those cases to one in which the trial court, after discharging the jury, is unable to reform the verdict so as to implement the jury's unmistakable intent. In fact, we might be persuaded by Wright's waiver argument if her proposed form of judgment had incorporated the award of $21,250 *as a contingency*. This was not the case. In fact, the proposed judgment omitted any reference to a contingency. In this light, it might as easily be contended that *Wright's* failure to seek resubmission amounted to waiver.

We must then consider whether the trial court, having correctly determined that the verdict was contingent and therefore defective, adopted the proper remedy. Once the jury had been discharged, the court had several options: (1) enter judgment for the full amount of the verdict, disregarding any contingency; (2) subtract the amount of the verdict that was contingent; or (3) order a new trial. Wright advocated the first remedy; Mayberry favored the third; the trial court chose the second.

The proper remedy for a defective verdict depends upon the nature of the defect. *Association Research and Development Corporation v. CNA Financial Corporation*, 123 Mich.App. 162, 333 N.W.2d 206 (1983).

"Where a verdict is defective because it contains mere surplusage the court may remedy the problem by deleting the surplusage from the final judgment. Even if the defect is not due to the presence of surplusage, the court may still alter the verdict itself so long as the court can ascertain the intent of the jury and the court's final judgment implements that intent. In other situations, however, such as where the verdict is inconsistent, or contains a remedy not authorized by law, the trial court must either reinstruct the jury or order a new trial." *Id.*, 333 N.W.2d at 209 (citations omitted).

*See also Dysart Associates Architecture and Construction, Inc. v. Hoeltgen*, 728 P.2d 756, 758 (Colo.Ct.App.1986) ("A trial court may amend a verdict in matters of form, but not of substance.")

■ In our opinion, the trial court's only option in this case was to order a new trial. The jury's unmistakable intent was to compensate Wright for the costs of future knee surgery, but only if the surgery were actually to be performed. Simply entering an unconditional judgment for the full amount

would be inconsistent with this intent: Wright would receive the $21,250 even if she decided to forgo surgery. On the other hand, striking the contingent amount of the verdict would also fail to give effect to the jury's intent: Wright might undergo surgery and not be compensated, or she might be unable to have the surgery because she could not afford it.

The trial court, unable to implement the jury's intent to make a contingent award of damages, took one additional step. Attempting to reach beneath the jury's intent to its reasons, the court inferred that the jury had found that Wright had failed to meet her burden of proof regarding the necessity for future surgery. This was pure conjecture, and it was error for the trial court to reform the verdict on this basis.

Had the matter been resubmitted to the jury with an instruction that damages could not be made contingent upon the occurrence of future events, the jury might well have awarded Wright the entire $65,-250. It would be equally reasonable, however, to assume that the jury would have awarded her only $44,000 or some intermediate figure calculated to compensate her for probable future damages. We conclude, therefore, that the trial court should have ordered a new trial on this ground.

### Mayberry's Cross–Appeal: Misconduct by Wright's Counsel

Mayberry argues that the trial court erred in denying his motion for a new trial based on opposing counsel's statements of personal opinion about the credibility of witnesses and the justness of Wright's cause. In light of our resolution of the appeal, we need address this issue only briefly.

During oral argument before this court, and later, in a supplemental brief, counsel for Mayberry advocated a new trial as to liability only, urging this court to place a "cap" of $44,000 on damages as a sanction for the misconduct alleged in the cross-appeal. Even assuming that opposing counsel's remarks were improper, Mayberry has

cited no authority that would tend to support the imposition of such a sanction, and our own research has revealed none.

### CONCLUSION

We find that Mayberry's cross-appeal was not frivolous or taken solely for the purpose of delay under Rule 25, Arizona Rules of Civil Appellate Procedure. We therefore deny Wright's request for attorney's fees.

The judgment is reversed and the matter is remanded for a new trial on all issues.

JACOBSON, P.J., and GREER, J., concur.