960 P.2d 55

**In re the Marriage of: Ann L. GEROW, Petitioner–Appellee,**

v.

**Bruce E. COVILL, Respondent– Appellant.**

**No. 1CA–CV 97–0187.**

Court of Appeals of Arizona, Division 1, Department C.

April 9, 1998.

Redesignated as Opinion and Publication ordered May 5, 1998.

As Amended Aug. 26, 1998.

Bryan Cave, LLP by Neil Vincent Wake, and Jensen & Kelley, P.A. by Robert A. Jensen, Phoenix, for Petitioner–Appellee.

Mariscal, Weeks, Mcintyre & Friedlander, P.A. by Michael S. Rubin, Robert L. Schwartz, Phoenix, for Respondent–Appellant.

## OPINION

LANKFORD, Presiding Judge.

¶1 Bruce E. Covill ("Husband") appeals from that part of a domestic relations judgment pertaining to Cyber Publishing, Inc. ("Cyber"). The trial court found that Husband had fraudulently conveyed his consulting business. The court accordingly awarded Ann L. Gerow ("Wife") a fifty percent ownership of that business, Cyber.

¶2 The facts are as follows. Husband and Wife married in 1974. Twenty years later, in May 1994, Wife filed a petition for dissolution.

¶3 At the time of filing, Husband was self-employed as an independent consultant working with information systems and information delivery, with a focus on electronic media. He worked primarily with the travel industry. By August 1994, Husband was involved in a new business entity, Cyber.

¶4 Cyber began as the result of conversations among Husband and his brother and sister-in-law, Jeff and Ann Covill. Cyber was to produce electronic brochures for businesses interested in having a presence on the Internet. Husband was named the president and a director of the company and was responsible for the day-to-day management of

company affairs. Incorporation occurred in August 1994, with Ann Covill listed as the sole shareholder. She had contributed $2500 for start-up costs. No shareholder, officer, director or employee of Cyber has ever contributed any further capital.

¶ 5 Shortly after incorporation, Wife learned of Cyber when she found the incorporation papers in Husband's office in their shared home. Husband disclosed information about Cyber to Wife in a letter sent a few weeks later.

¶ 6 Two of the four clients [1] Husband had worked with in his independent consulting business in recent years became Cyber's major clients. Cyber provided Internet services for both companies, The Hotel Industry Switch Company ("THISCO") and Best Western International.

¶ 7 Though he had maintained his sole proprietorship through the first few months of Cyber's existence, Husband had ceased his business completely and worked solely for Cyber by February 1995. His salary was increased from $2500 per month to $10,000 per month and he received a $30,000 bonus in 1994. Husband received no designated payment for any intangible assets he brought to Cyber from his sole proprietorship, such as goodwill or a client list.

¶ 8 In the joint pretrial statement, Wife raised the issue of the true ownership of Cyber. She claimed that instead of merely being an employee of the company, Husband actually was an owner. She sought equitable distribution of Cyber as a community asset. The joint pretrial statement was filed June 7, 1995. Though the trial had originally been set to begin in July 1995, it was continued and began September 21, 1995, and concluded on January 17, 1996, after a total of nine trial days.

¶ 9 The parties submitted their proposed findings of fact and conclusions of law. Husband objected to Wife's proposed findings and conclusions. The court adopted substantially all of Wife's proposals, but later acknowledged that it had not considered the objections. Implicit in Rule 3.7(c), Rules of the Superior Court of Maricopa County, is

that the court will consider the objections before entertaining findings and conclusions. However, the objections here generally related to the sufficiency of the evidence. Such concerns may be and indeed were in this case addressed in a motion for new trial. Sufficiency of the evidence objections can be made even when not raised as objections to proposed findings and conclusions. Ariz. R. Civ. P. 52(b). Therefore, though it may have been error to fail to consider the objections, the error is harmless because any substantive errors in the findings and conclusions were raised by motion for new trial and have been preserved for appeal.

¶ 10 The court made extensive findings of fact. It stated that it disbelieved Husband's statement that he was financially unable to start Cyber himself in light of his historical six-figure income and the expenditure of "tens of thousands of dollars" in gifts and loans to a female friend. The court saw the incorporation of Cyber as an attempt to "remove the business and its asset from the marital community." The court also found that all of Cyber's revenue-producing clients were either prior clients of Husband's or derived from his prior business contacts, which had developed during the marriage. The court noted that Cyber had been "remarkably successful and highly lucrative for a start-up business." The court also found that Husband had breached a fiduciary duty owed to Wife by "permitting his sole proprietorship to be incorporated and wholly owned by his sister-in-law."

¶ 11 As a result of these findings, the court ordered in its judgment and decree that:

[A]s between petitioner and respondent, petitioner is and shall be the owner of one-half of the capital stock in Cyber Publishing, Inc. Upon resolution, whether by consent or by adjudication, as against Ann Covill that the stock ostensibly in her name is in fact owned by husband or the marital community of husband and wife, the ownership of the stock on the books and records of Cyber Publishing, Inc. shall

---

1. The remaining two clients Husband previously worked for are no longer in business.

also be changed to reflect wife's one-half ownership interest as provided hereon.

The court denied Husband's motion for new trial.

¶ 12  Husband advances eight contentions on appeal. They are as follows:

1.  Because the court awarded Wife one-half of Cyber stock, but ordered a stock ownership record change reflecting that award only after the issue of Husband's ownership was decided as against Ann Covill, the judgment is conditional and therefore void.

2.  Wife failed to join indispensable parties—Ann Covill and Cyber—in the divorce proceedings.

3.  The evidence does not support the trial court's finding that Husband transferred community property to Cyber.

4.  The decree violates Husband's constitutional right against indentured servitude.

5.  No fraudulent conveyance was shown because the necessary elements were not proven by clear and convincing evidence.

6.  The court erred in finding that Husband owed Wife a fiduciary duty and that Husband breached that duty.

7.  Wife did not properly and timely disclose and raise the issues concerning the formation of Cyber.

8.  Pursuant to Arizona Civil Appellate Procedure Rule 21(c), Husband is entitled to attorneys' fees.

¶ 13  We have jurisdiction over this appeal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1), 12–2101(B), and 12–2101(F)(1). On appeal, we view the evidence in the light most favorable to the prevailing party and affirm if any evidence supports the judgment. *Paul Schoonover, Inc. v. Ram Constr., Inc.,* 129 Ariz. 204, 205, 630 P.2d 27, 28 (1981). We are not bound, however, by the trial court's decisions on questions of law. *Premier Fin. Servs. v. Citibank (Arizona),* 185 Ariz. 80, 87, 912 P.2d 1309, 1316 (App.1995).

¶ 14  The first issue is Husband's allegation that the judgment is void because it is conditional. The trial court stated that "*as between petitioner and respondent,* petitioner is and shall be the owner of one-half of the capital stock in Cyber Publishing, Inc." (Emphasis added). The court then stated that change would be later reflected on Cyber's books only after the ownership of the stock was decided. Husband asserts that the unsettled ownership issues against Ann Covill, the record owner of Cyber's stock, make the judgment between Husband and Wife conditional and therefore, void.

¶ 15  While conditional judgments are generally void, there are exceptions to this rule. *Peterson v. Overson,* 52 Ariz. 203, 205, 79 P.2d 958, 959 (1938). One exception is an alternative or conditional judgment that "is of such a nature that it may be determined therefrom definitely what rights and obligations pertain to the respective parties." *Id.* at 206, 79 P.2d at 959. Here, the rights and obligations of Husband and Wife may be determined with such certainty. As between them, Wife has a right to one-half of the value of that portion of Cyber determined to be Husband's.[2] Husband has the obligation to release that amount to Wife. The domestic relations court made the assumption that his actual ownership was one hundred percent, but recognized that his ownership as against Ann Covill would be determined separately.[3] The contingency, the Husband's ownership, does not change the rights and obligations between the spouses.

¶ 16  Equitable judgments constitute another exception. *Wright v. Mayberry,* 158 Ariz. 387, 389, 762 P.2d 1341, 1343 (App. 1988) (recognizing equitable exceptions to the rule); 49 C.J.S. *Judgments* § 83 (1997). A domestic relations court sits in equity. *Guzman v. Guzman,* 175 Ariz. 183, 188, 854 P.2d 1169, 1174 (App.1993). "When a court of equity renders a conditional decree ... [i]t is simply adjusting the equities between the

---

2.  Though the decree language states that the award is fifty percent of Cyber's stock, both parties conceded at oral argument that the award would actually be fifty percent of Husband's Cyber stock.

3.  *See also Ward v. Blair,* 231 Ky. 96, 21 S.W.2d 123 (1929) (affirming a judgment made subject to future adjudication on the rights of a nonparty third party).

parties and granting to one or the other certain relief to which the litigants may be entitled...." *Mason v. Ellison*, 63 Ariz. 196, 203, 160 P.2d 326, 329 (1945); *see also In re Marriage of Zeliadt*, 390 N.W.2d 117, 120 (Iowa 1986) ("The court sitting in equity has the power and flexibility to impose equitable terms upon parties as conditions of granting equitable relief."). Here, the domestic relations court merely used its power as an equity court to "adapt[ ] its relief and mold[ ] its decree[ ] to satisfy the requirements of the case and to conserve the equities of the parties...." *Mason*, 63 Ariz. at 203, 160 P.2d at 329 (citation omitted).

¶ 17 Though Husband cited *Peterson* and *Wright* in support of his contention that all conditional judgments are void, both cases recognize exceptions to the general rule. Husband also cites *Weiner v. Ash*, 157 Ariz. 232, 756 P.2d 329 (App.1988), a case in law and not in equity. In *Weiner*, the court found that where the award appeared to be based on the possibility that that defendant might again seek to kill the plaintiff and it would be for any future damage that might result from that occurrence, the judgment was void as "an actual award of compensation for probable future damages." *Id.* at 235, 756 P.2d at 332. The contingencies involved a speculative future event and the amount of damages from that event. In the present action, the amount of damages has already been established and the ownership of Cyber will be decided in Maricopa County cause number CV 96–13730.

¶ 18 The second issue raised by Husband is Wife's failure to join as parties Cyber and Ann Covill. Cyber is not directly interested in who owns its stock and thus in the change wrought by the divorce court. Husband does not argue otherwise. We do not address this point any further.

¶ 19 However, Husband does assert that Ann Covill is an indispensable party because she is the alleged third party in the fraudulent conveyance[4] and as such, he implies, Wife could not obtain an effective judgment in Ann Covill's absence. The indispensability of parties is a question of law. *Connolly v. Great Basin Ins. Co.*, 6 Ariz.App. 280, 285, 431 P.2d 921, 926 (1967). We review questions of law *de novo*. *See Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966). We note that though this issue was not raised below, the defense of failure to join is not waivable and may be raised for the first time at the appellate level. *City of Flagstaff v. Babbitt*, 8 Ariz.App. 123, 127, 443 P.2d 938, 942 (1968).

¶ 20 Ann Covill *could* have been joined pursuant to Arizona Civil Procedure Rule 20. Additionally, A.R.S. section 25–314(D) allows the court to join parties "necessary for the exercise of its authority." *Roden v. Roden*, 190 Ariz. 407, 409, 949 P.2d 67, 69 (App.1997), permits the dissolution court to decide related matters. However, Ann Covill was not an indispensable party, without whom the action could not proceed.

¶ 21 The court decides who is an indispensable party after it finds that the party is necessary but cannot be joined. Ariz. R. Civ. P. 19(b). A necessary party is: (1) one in whose absence complete relief is not possible among those already parties, or (2) one whose interests would be impaired or impeded by a judgment, or (3) one whose absence would leave those already parties subject to multiple or inconsistent obligations. Ariz. R. Civ. P. 19(a). The court also considers possible resulting prejudice and adequacy of remedy before determining indispensability.[5]

---

4. Husband does not argue that Ann Covill was indispensable due merely to her status as the putative sole shareholder of Cyber.

5. Rule 19(b) states:
   If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:
   first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;
   second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measure, the prejudice can be lessened or avoided;
   third, whether a judgment rendered in the person's absence will be adequate;

¶ 22  Ann Covill is not an indispensable party.  If an action is brought for a wrongful transfer of real or personal property and it is possible to fashion relief which does not adversely affect the transferee's interest, the transferee need not be joined in an action for a judgment of damages against the defendant.  3A James W. Moore *et al.*, *Moore's Federal Practice* ¶ 19.09[5] at 19–186 (2d ed.1985); *see also Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.1953) (holding that when a plaintiff seeks damages only against the defendant who transferred the property and not against the party in possession, the possessing party is not indispensable).  The "present holder of legal title to property alleged to have been transferred fraudulently is [not] indispensable if . . . the relief sought against the defendant does not injuriously affect the absent transferee's title."  Moore, *supra* at 19–188.

¶ 23  The court was able to fashion relief despite Ann Covill's absence.  The court, pursuant to A.R.S. section 25–318, decided a claim between the spouses.  It awarded Wife an interest against Husband without affecting any rights Ann Covill may have.  Ann Covill is not an indispensable party.

¶ 24  The third issue raised by Husband is that the evidence does not support the trial court's finding that Husband transferred community property to Cyber.  Reviewing the sufficiency of evidence, we will not reweigh the evidence; we determine only if substantial evidence supported the court's action.  *Rowe v. Rowe*, 154 Ariz. 616, 620, 744 P.2d 717, 721 (App.1987).  Absent clear error, we are bound by the trial court's findings.  *Aztec Film Productions v. Tucson Gas & Elec. Co.*, 11 Ariz.App. 241, 243, 463 P.2d 547, 549 (1969).  In this case, we look to see if the evidence supports the existence and transfer of a community asset.

¶ 25  Husband argues that though the trial court found that his "contacts," "expertise," and "knowledge" were the assets transferred to the corporation, these are not community assets.  Actually, the court never

fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

stated specifically that these were the community assets removed by Husband, and indeed the court was never precise in its description.  However, the court recognized that intangible assets were involved.  Because Husband received a substantial salary and bonuses, he was compensated for his labor and the expertise and knowledge he employed in his work.  Wife has not attempted to take any portion of Husband's income.  As long as he is compensated for those intangibles, the corporation does not retain them as its own assets.

¶ 26  Other intangible assets may constitute community property.  For example, the "goodwill" developed in connection with Husband's sole proprietorship during the marriage is considered a community asset.  *See Mitchell v. Mitchell*, 152 Ariz. 317, 320, 732 P.2d 208, 211 (1987).  Goodwill is defined as an intangible asset that is "an element responsible for profits in a business."  *Wisner v. Wisner*, 129 Ariz. 333, 337, 631 P.2d 115, 119 (App.1981) (citation omitted).  Goodwill may also be defined as one's reputation.  *Id.*  A spouse has a claim for a share of goodwill as a community asset:

Under the principles of community property law, the wife, by virtue of her position as wife, made to that value [goodwill] the same contribution as does a wife to any of the husband's earnings and accumulations during marriage.  She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.

152 Ariz. at 320, 732 P.2d at 211 (citation omitted).

¶ 27  Husband cannot change the community nature of the goodwill asset by merely changing the form of its ownership through incorporation.  *Rowe*, 154 Ariz. at 619, 744 P.2d at 720.  The goodwill created was due to Husband's labors expended during marriage and the community is entitled to the asset he created.  *See Garrett v. Garrett*, 140 Ariz. 564, 568, 683 P.2d 1166, 1170 (App.1983).

(Format altered).

¶ 28 Wife has asked for and received only a portion of those community assets developed during the marriage and transferred to Cyber for no consideration.[6] Because Husband concedes that Cyber well compensated him for his labor, the award of Cyber stock necessarily represents a division of the capital of Cyber and not an award based on the value of Husband's labor.[7]

¶ 29 The evidence supports the court's decision. All of the revenue-producing clients of Cyber were developed through Husband's previous clientele and associations acquired during the marriage. Cyber was conceived of and developed by Husband during the marriage. Negotiations for one of the Cyber contracts were undertaken by Husband during his sole proprietorship before Cyber's incorporation. If Husband had incorporated Cyber, instead of allowing Ann Covill to do so, Cyber would have been a community asset and subject to asset distribution pursuant to the dissolution.

¶ 30 Husband cites a number of cases in support of his contention that no community asset was created or transferred. While the cases he cites find no community property in professional licenses or degrees, in post-dissolution separate earnings, or in contingent fees paid after dissolution, Husband overlooks that the cases do recognize goodwill as a community asset. *See, e.g., Wisner,* 129 Ariz. 333, 631 P.2d 115 (holding that a professional degree or license is separate property but professional goodwill of a business earned during marriage is community property); *Koelsch v. Koelsch,* 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986) (holding that post-dissolution earnings or benefits are separate property, but those earnings and/or retirement benefits earned during marriage are community property); *Miller v. Miller,* 140 Ariz. 520, 523, 683 P.2d 319, 322 (App. 1984) (holding similar to *Koelsch* ); *Garrett,* 140 Ariz. 564, 683 P.2d 1166 (holding that the portion of contingent fee earned during marriage is community property though any portion earned post-dissolution is separate property). We hold that the trial court properly found and distributed a community asset.

¶ 31 As his fourth issue, Husband claims the trial court's award violated his constitutional right against indentured servitude. He contends that the court improperly conveyed an interest in his post-dissolution income and earning potential. This argument ignores the nature of the relief awarded. Wife has been awarded only half of the stock, representing her portion of an intangible asset, goodwill, created during the marriage. She received no portion of Husband's future income.

¶ 32 The fifth issue is Husband's claim that the elements of fraudulent conveyance were not sufficiently proven.[8] We review the evidence in a light most favorable to supporting the trial court's judgment. *Premier Fin. Servs.,* 185 Ariz. at 85, 912 P.2d at 1314.

6. During oral argument on appeal, Husband argued that the trial court could not distribute property on which no value had been placed. This argument fails to recognize the court's broad discretion in apportioning community assets as the court sees fit. *Neal v. Neal,* 116 Ariz. 590, 594, 570 P.2d 758, 762 (1977). We see no absolute need to value an asset if it may otherwise be distributed proportionately between spouses.

Husband advanced a related contention during oral argument for the first time. Husband contended that the court did not have the power to award Wife any portion of the stock. Instead, he argued the court was limited to awarding monetary compensation for that portion of the stock determined to be Wife's. Again, this ignores the well-established discretionary power of the court. *Id.*

7. The capital of Cyber may include not only the goodwill contributed by Husband, but also the cash contributed by Covill and the goodwill developed by Cyber. However, Husband does not contend that these considerations render the award of one-half of the stock excessive.

8. Husband actually begins his argument by saying that the nine elements of fraud must be proven by clear and convincing evidence in order to prove fraudulent conveyance.

While Husband is correct that the nine elements must be proven by clear and convincing evidence to prove fraud (*Poley v. Bender,* 87 Ariz. 35, 39, 347 P.2d 696, 698 (1959)), he is incorrect in applying the rules of common law fraud to a fraudulent conveyance. Though clear and convincing evidence of fraudulent conveyance is required, proof of the nine elements of common law fraud is not required. *Linder v. Lewis, Roca, Scoville & Beauchamp,* 85 Ariz. 118, 124, 333 P.2d 286, 290 (1958); *In re Marriage of Benge,* 151 Ariz. 219, 223, 726 P.2d 1088, 1092 (App. 1986); *see* A.R.S. § 44–1004.

¶ 33 Fraudulent conveyance may be shown by clear and satisfactory evidence of an "actual intent to hinder, delay or defraud any creditor of the debtor" or of a debtor receiving no reasonable consideration for a transfer or obligation under certain circumstances. A.R.S. § 44–1004(A)(1); *see Sackin v. Kersting,* 105 Ariz. 464, 465, 466 P.2d 758, 759 (1970); *Transamerica Ins. Co. v. Trout,* 145 Ariz. 355, 360, 701 P.2d 851, 856 (App.1985). Actual intent may be shown by direct proof or by circumstantial evidence from which actual intent may be reasonably inferred. *Benge,* 151 Ariz. at 223, 726 P.2d at 1092; *Premier Fin. Servs.,* 185 Ariz. at 85, 912 P.2d at 1314. The statute provides a non-exclusive list of factors to consider when determining if actual intent to hinder, delay or defraud exists. A.R.S. § 44–1004. No further evidence of the common law elements of fraud are needed once actual intent is shown. *See Benge,* 151 Ariz. at 223, 726 P.2d at 1092.

¶ 34 Though Husband reviews seven of the "badges of fraud" in an attempt to show that they were not proven by clear and convincing evidence, he fails to realize that the badges are merely "signs or marks of fraud" from which intent may be inferred, and are not required elements. *Torosian v. Paulos,* 82 Ariz. 304, 312, 313 P.2d 382, 388 (1957); A.R.S. § 44–1004. "[T]hey are facts having a tendency to show the existence of fraud, although their value as evidence is relative and not absolute ... Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent." *Torosian,* 82 Ariz. at 312, 313 P.2d at 388; *see also Cashion Gin Co. v. Kulikov,* 1 Ariz.App. 90, 97, 399 P.2d 711, 718 (1965) (recognizing that one or two badges of fraud may be sufficient to prove fraudulent conveyance).

¶ 35 In responding to the badges of fraud found by the court, Husband relies heavily on his assertion that no asset was ever transferred. As discussed above, however, the trial court properly found that an asset was transferred.

¶ 36 The following discussion considers the pertinent "badges of fraud." One, Husband transferred the goodwill of his sole proprietorship to an insider, a family member. Two, he retained control of the asset by retaining substantive control of Cyber. Three, the transfer was concealed until Wife discovered the incorporation papers. Four, before the transfer was made, Husband had already become a party to a legal action, the dissolution. Five, Husband transferred all or substantially all of his sole proprietorship's assets. By the time the sole proprietorship ceased operation, no further assets remained. Six, no payment was ever made for the goodwill Husband brought to Cyber. We hold that Husband's actual intent to hinder, delay or defraud Wife could be reasonably inferred from the presence of these factors, which sufficiently supports a finding of fraudulent conveyance.

¶ 37 Husband contends, as his sixth issue, that the court erred when it found that Husband owed Wife a fiduciary duty and that the duty was breached. Whether a duty exists is a question of law, so we review it *de novo. See Tovrea Land & Cattle Co.,* 100 Ariz. at 114, 412 P.2d at 51.

¶ 38 Husband concedes that a fiduciary duty exists between spouses, but he contends that duty ceases upon notice of intent to dissolve the marriage. He cites *Applebaum v. Applebaum,* 93 Nev. 382, 566 P.2d 85, 87 (1977), in which the court, confronted with the settlement negotiations between divorcing spouses, found that continued shared residence or the absence of animosity did not create a fiduciary duty between the parties. Unlike the present action, the court addressed only the existence of a fiduciary duty in settlement negotiations between the spouses who continue to reside together amicably during dissolution proceedings. This narrow holding may not be extended to cover the question of a continuing fiduciary duty between spouses regarding the transfer of community assets to outside parties before termination of the marriage.

¶ 39 More on point, though, are the cases Wife cites. In *Smith v. Smith,* 124 Idaho 431, 860 P.2d 634, 643 (1993), the Idaho Supreme Court held that the fiduciary duty of spouses does not cease until termination of the marriage. In *Smith,* the husband had

earned approximately $94,000 in fees during the marriage but settled for considerably less than half that amount, thereby depriving the community of an asset. In *In re Marriage of Modnick,* 33 Cal.3d 897, 191 Cal. Rptr. 629, 663 P.2d 187, 191 (1983), the California Supreme Court recognized the confidential and fiduciary relationship between spouses and found that the duty continues until dissolution and property distribution are complete. In that case, the court found a breach of fiduciary duty where the husband had concealed bank accounts to which he had contributed during the marriage. Though Husband here asserts that no assets were concealed, the effect of removal or concealment of marital assets is the same.

¶ 40 Agreeing with the Idaho and California courts, we hold that a fiduciary relationship between spouses does exist with respect to community assets until the marriage is terminated. Removal of community assets without spousal notice and/or approval can constitute a breach of that duty. Here, Husband removed a community asset, the goodwill of the sole proprietorship, from the marital community without notice to Wife. He gifted that community property asset to an outside party, though the marital community was never compensated for its loss. The trial court had evidence from which it could conclude that Husband breached his fiduciary duty to Wife.

¶ 41 The seventh issue is Husband's allegation that Wife did not properly and timely disclose and raise the issues concerning the formation of Cyber in the trial court.[9] Arizona Civil Procedure Rule 26.1 states that information regarding legal theories on which claims are based must be disclosed within 30 days of their discovery and no later than 60 days before trial, unless the court grants more time. Because the court has discretion to consider prejudice to either side from the inclusion or exclusion of the claim as well as the parties' actions and diligence (*General Motors Corp. v. Arizona*

*Dep't of Revenue,* 189 Ariz. 86, 99, 938 P.2d 481, 494 (App.1996)), we review the court's decision to allow Wife to raise the issue for abuse of discretion only. *See id.*

¶ 42 The rules regarding disclosure are born out of a policy that the facts and issues to be litigated must be fairly exposed, as should be witnesses and exhibits. *Bryan v. Riddel,* 178 Ariz. 472, 477, 875 P.2d 131, 136 (1994). The purpose of the disclosure rule is give to the parties "a reasonable opportunity to prepare for trial or settlement—nothing more, nothing less" (*id.* at 476 n. 5, 875 P.2d at 135 n. 5) and to "maximize the likelihood of a decision on the merits." *Allstate Ins. Co. v. O'Toole,* 182 Ariz. 284, 287, 896 P.2d 254, 257 (1995). The rule should be applied with common sense to promote that end, rather than being used as a technical weapon by opposing counsel. *Id.*

¶ 43 Keeping the purpose of Rule 26.1 in mind, we find no abuse of discretion by the trial court. Though the pretrial statement and memorandum raising the issue of fraudulent conveyance would have been late had the trial been held as originally planned, the continuance gave Husband more than 60 days to prepare his response at trial. Indeed, he declined a further continuance offered to him. The purpose of Rule 26.1 was fulfilled because Husband had adequate notice and time to prepare.

¶ 44 The last issue is Husband's request for attorneys' fees pursuant to Rule 21(c), Ariz. Civ.App. R. Wife also requests attorneys' fees under A.R.S. sections 12–341.01(C) and 12–349 for a groundless or bad faith claim made without substantial justification, and under the domestic relations statute, A.R.S. section 25–324.

¶ 45 Husband cites Arizona Civil Appellate Rule 21(c) and *Nelson v. Nelson,* 164 Ariz. 135, 138, 791 P.2d 661, 664 (App. 1990), in support of his claim for attorneys' fees. The *Nelson* court relied on A.R.S. section 25–324, which gives the court the

---

9. Husband also argued for the first time in oral argument before this Court that Wife did not timely disclose that she would ask the court to award actual stock instead of monetary compensation. Husband claims that he was surprised and prejudiced by the court's decision to do so. But again, Husband overlooks the court's discretionary power in community property distribution (*Neal,* 116 Ariz. at 594, 570 P.2d at 762). We see no abuse of that discretion and no prejudice.

discretion to award attorneys' fees after considering the financial resources of each party. Husband provides no information about the financial resources of either party nor does he provide evidence supporting his claim for fees. We decline to award Husband's attorneys' fees.

¶ 46 Wife contends that she is entitled to attorneys' fees due to Husband's groundless and/or bad faith appeal. A.R.S. § 12–341.01(C). Additionally, she contends that a groundless or bad faith claim also subjects Husband to an award of her attorneys' fees under A.R.S. section 12–349(A), as a claim without substantial justification. She also requests attorney's fees on this appeal under A.R.S. section 25–324. Attorneys' fee awards under this statute are based on the financial positions of the parties. The trial court did not find that either parties' financial resources warranted such an award, and neither party contends on appeal that the court's decision was erroneous or that there has been any change in their respective financial positions since then. We do not believe that the appeal warrants attorneys' fees due either to financial need or as a sanction, and accordingly deny this request.

¶ 47 For these reasons, the judgment of the superior court is affirmed.

GARBARINO and GRANT, JJ., concur.