NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

CARMEN D. JIMENEZ, *Petitioner/Appellee,*

*v.*

JOSE DE JESUS JIMENEZ, *Respondent/Appellant.*

IRMA A. GARCIA, *Third Party/Respondent/Appellant.*

No. 1 CA-CV 16-0627 FC
FILED 3-22-2018

Appeal from the Superior Court in Yuma County
No. S1400DO200201388
No. S1400DO200901095[1]
(Consolidated)
The Honorable Lawrence C. Kenworthy, Judge

**AFFIRMED**

---

[1] Although Appellants did not include case number S1400DO200901095 in their notice of appeal, Appellants appeal from an order entered in that case. Therefore by order we amend the caption to include case number S1400DO200901095.

COUNSEL

Meerchaum & Orduno, PLLC, Yuma
By Candice Orduno-Crouse
*Counsel for Respondent/Appellant and Third-Party Respondent/Appellant*

Law Office of Sonia Monique Ramirez, PLLC, Yuma
By Sonia M. Ramirez Sardinas
*Co-Counsel for Petitioner/Appellee*

S. Alan Cook, PC, Phoenix
By S. Alan Cook, Sharon Ottenberg
*Co-Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

**¶1**     Respondent/Appellant Jose De Jesus Jimenez ("Husband") and Third-Party Respondent/Appellant Irma A. Garcia (collectively, "Appellants") appeal from a decree of dissolution awarding Petitioner/Appellee Carmen D. Jimenez ("Wife") an equalization payment of $122,266 as her community share of two restaurants. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**[2]

**¶2**     Around 2002, Wife and Husband separated. Before separating they sold two restaurants they owned together, which eventually yielded about $10,000 in proceeds. That same year, Husband, whose nickname is "Pepe," began living with his girlfriend, Garcia. Later that year Husband used the sale proceeds to open a restaurant, Los Manjares de Pepe ("Pepe One"). Garcia's name was the only one listed on

---

[2] In reviewing the apportionment of community property, we consider the evidence in a light most favorable to upholding the family court's ruling. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).

the business license. In 2009, Wife filed a petition for dissolution of marriage with children, and served Husband with the petition. In 2011, a second restaurant, "Pepe Two," was opened, also with Garcia's name as the only name on the business license.

¶3            In September 2011, Wife filed a motion for temporary orders seeking spousal support. She alleged Husband owned the two restaurants, but "disguised" the income by putting the restaurants in Garcia's name. After a hearing, the family court ordered the parties to submit their tax returns and took the matter under advisement. Those returns reflected that Husband filed Garcia's state and federal tax returns for Pepe One from 2008 to 2010.

¶4            On November 23, 2011, the family court entered its under advisement ruling (the "temporary order"). The court found, as relevant here, a portion of Pepe One was in fact community property. The family court determined "Pepe [One] should be divided 25% to husband's girlfriend, 50% to Husband's reputation/goodwill and 25% to Husband's capital contribution[s] when the business was started." Based on the business income in 2008 and 2009 the court also found "the community property portion of [] Pepe [One] has a value of $130,000.00." Based on these findings, and a consideration of the relevant statutory factors, the court awarded wife monthly spousal maintenance. The court also determined "Wife should be compensated for the value of the business in a community property division [in a] final order, not a temporary order."

¶5            After the court issued the temporary order, Wife filed a second amended petition for dissolution of marriage with children, seeking, as relevant here, an equitable division of community property.[3] She also brought claims for conversion, fraudulent conveyance, and a constructive trust. Wife's claims were based on her contention that Pepe One and Pepe Two were "community businesses" and as such: (1) Wife was denied her community interest because Husband placed the restaurants in Garcia's name (conversion); (2) Husband hindered and defrauded Wife by placing the community businesses in Garcia's name (fraudulent

---

[3] In her initial petition, Wife sought a determination of custody, parenting time, and child support. In her second petition, Wife dropped the issues of custody and parenting time because by that time the children were adults, and she later waived the issue of child support. Therefore, the family court's final order does not address these issues.

conveyance); and (3) Wife was entitled to relief, given the court's findings in the temporary order that a portion of Pepe One was community property (constructive trust).[4]

**¶6**       In September 2013, Wife moved to join Garcia as a necessary party. *See* Ariz. R. Fam. P. 33(C).[5] Wife argued that, absent joinder, she had no way of receiving her community interest in the restaurants. The family court granted the motion. Wife filed a third amended petition for dissolution of marriage, adding Garcia as a party to the claims for conversion, fraudulent conveyance, and constructive trust.

**¶7**       In 2015, the court held a bench trial. At the start of trial, counsel for both Husband and Garcia conceded a portion of Pepe One was community property, but argued Wife had only a 25% community interest in Pepe One. Counsel denied Wife had any community interest in Pepe Two.

**¶8**       Appellants both testified that Husband was part owner of Pepe One. Husband testified Pepe One did not have any value because business had dropped. He further testified Garcia was the sole owner of Pepe Two. Appellants both testified Husband primarily worked at Pepe Two, but Garcia did not keep track of his hours and Husband paid himself without any need to obtain Garcia's consent. They argued, regardless, neither Pepe One nor Pepe Two had any value.

**¶9**       Wife claimed she had a community interest in Pepe One and Pepe Two, based in part on Husband's goodwill. Wife disputed the restaurants had no value and presented a valuation of the restaurants, including good will, of $200,000. She based her valuation on factors, such as her experience working in the restaurant business and her knowledge of the restaurants' clientele and earnings (based on her children working at Pepe One and Pepe Two).

**¶10**      Wife sought a portion of Husband's goodwill, as a community asset, on the basis that Husband had provided his name,

---

[4] The dissolution of marriage case was subsequently consolidated with the parties' child support case.

[5] We cite to the current version of all statutes and rules in this decision, which have not been materially amended since the time of the relevant actions.

4

reputation, and recipes they previously created together for Pepe One and Pepe Two. Wife presented evidence of Husband's ownership and goodwill that included a newspaper interview with Husband about the restaurants in which Husband stated Pepe One and Pepe Two were a "family business" and the recipes they used were his "mom's" and "some [that he] learned along the way." Wife testified the recipes were recipes she and Husband had developed at their previous restaurant they owned together.

¶11        At the conclusion of trial, the family court ordered briefing and later issued a decree of dissolution. The family court made several findings, including: assets for Pepe One and Pepe Two had been placed in Garcia's name and Garcia was made the owner to avoid Wife's community interests; Husband and Garcia failed to disclose business records for Pepe One and Pepe Two and there were "missing or unaccounted for monies and assets" they failed to disclose; Garcia had converted Wife's share of goodwill for her own use; and Garcia and Husband had hid goodwill profits, making it difficult to determine how much money was traceable back to Pepe One and community contributions to the Appellants' residence on Third Place (the "Third Place Property").

¶12        The family court also found the claim that Pepe One and Pepe Two had low profits and wages after 2011 "not believable" based on the evidence of increases in both net income and gross income for previous years. It further found Husband's goodwill was a community asset that existed at the time Wife petitioned for dissolution. The court further found that, based on evidence it now had, it had previously "grossly undervalued" Husband's goodwill in 2011.

¶13        The family court divided the property and debts and ordered Husband to pay spousal maintenance. Regarding Pepe One and Pepe Two, the family court ordered Husband and Garcia to make "an equalization payment for the restaurants in the amount of $122,266.00" which included Husband's goodwill, to compensate Wife for her "community share from both restaurants [Pepe One and Pepe Two]." To secure the equalization payment the court ordered a judicial lien against Pepe One and the Third Place Property, which was titled in Garcia's name as well. The court also granted Wife her attorney fees and costs.

## DISCUSSION

### I.  Jurisdiction

¶14        Appellants argue the family court did not have subject matter jurisdiction to hear and decide Wife's claims for conversion, fraudulent conveyance, and constructive trust (collectively, the "civil claims"). They rely on Arizona Revised Statutes ("A.R.S.") section 25-311, which grants the superior court, in part, jurisdiction to hear and decide matters regarding a dissolution of marriage as set forth in the marital statutes. As we construe it, Appellants' argument is that the civil claims are not contained within the marital statutes, A.R.S. §§ 25-311 to -331, and thus, the family court did not have jurisdiction to consider the civil claims when determining and awarding Wife her share of the community assets in a divorce proceeding.

¶15        Subject matter jurisdiction is a question of law we review de novo. *Ader v. Estate of Felger*, 240 Ariz. 32, 43, ¶ 37 (App. 2016). Subject matter jurisdiction "refers to a court's statutory or constitutional power to hear and determine a particular type of case." *Id.* at 44, ¶ 43 (citations omitted). As noted, A.R.S. § 25-311 grants the court jurisdiction to hear and decide all matters arising pursuant to the marital statutes, A.R.S. §§ 25-311 to -331, including, as here, a division of the marital community. The superior court is a "single unified trial court of general jurisdiction," and the separation of the superior court into divisions is "purely imaginary and for convenience only." *DiPasquale v. DiPasquale*, 243 Ariz. 156, 158, ¶ 11 (App. 2017) (citations omitted). "To departmentalize the [superior] court, however, is not to partition its general subject matter jurisdiction." *State v. Marks*, 186 Ariz. 139, 142 (App. 1996). Appellants' grievance, though raised under the purview of "jurisdiction," is actually  whether the family court exceeded the scope of its authority under the marital statutes. *See In re Marriage of Thorn*, 235 Ariz. 216, 220, ¶ 17 (App. 2014) (subject matter jurisdiction is not "coterminous" with the family court's authority to act pursuant to the marital statutes).

¶16        Under A.R.S. § 25-318(A) the family court has authority to assign each spouse their sole and separate property and to equitably divide the community. In so doing, the family court "is specifically authorized to consider excessive or abnormal expenditures and the concealment or fraudulent disposition of community property when apportioning community property." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 6 (App. 1998) (citations omitted); *see also* A.R.S. § 25-318(C). The family court undoubtedly had authority to consider and authorize relief for Wife's

claims, as they were claims to a portion of what Wife argued were "community businesses"—Pepe One and Pepe Two.[6]

¶17        As noted above, the family court awarded what it determined was Wife's share of the community and issued a lien on Pepe One and the Third Place Property—properties it found Garcia and Husband had comingled with Wife's share of the community assets—to secure payment. Without question, the family court had authority to grant such relief in the decree of dissolution in which the court is charged with making an equitable division of community property. A.R.S. § 25-318(A), (C), (E); *Hunt v. Hunt*, 22 Ariz. App. 554, 556 (1974) ("It is well settled in Arizona that divorce is a statutory action and that the trial court has only such authority as is given it by statute.").

¶18        Appellants also assert the court lacked "jurisdiction" because its award of "a monetary judgment for equalization" (the $122,266) was an *in personam* award for "money damages." As discussed, the family court's award of Wife's community interest and issuance of the liens were in the province of the family court's authority to divide the community estate. A.R.S. § 25-318(A), (E). The family court necessarily must establish which assets are part of the community and therefore susceptible to division. Here, the court's determination that Wife was entitled to a monetary equalization payment does not convert the community property award into a judgement for money damages against Garcia or Husband. The amount necessary must be derived from the community assets. Garcia and Husband may have to liquidate some of the assets Husband was awarded to equalize the marital community property division, but he was awarded assets of equal relative value, Pepe One and Pepe Two.

¶19        Appellants next contend the family court exceeded its statutory authority in its award of Wife's community interest because it improperly considered "marital misconduct." Section 25-318(A) directs the family court to "divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct." What Appellants frame as "marital misconduct" are really factors the family court was permitted to consider under A.R.S. §

---

[6] This point was emphasized by the family court at trial when it rejected Husband's argument that the claims constituted legal actions Wife could not bring in divorce proceedings. As noted by the family court, the issue, with respect to these claims, was what "relief" the court had "authority to enter," finding that it had the authority "to divide all the assets that are out there that are part of the community."

25-318(C). Specifically, A.R.S. § 25-318(C) "does not prevent the court from considering . . . abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common."

¶20        Accordingly, the family court had both subject matter jurisdiction and the authority to consider Wife's civil claims and to award her a community interest in Pepe One and Pepe Two.

## II.      Temporary Order – Joinder

¶21        Appellants argue Garcia should have been joined as a necessary party before the family court issued the temporary order, given its findings that a portion of Pepe One was a community asset. They ask this court to vacate the decree of dissolution and remand the matter for the family court to consider Garcia's interests. Appellants did not raise this argument below, but the defense of failure to join a necessary party, which we review de novo, may be raised for the first time on appeal. *Gerow v. Covill*, 192 Ariz. 9, 14, ¶ 19 (App. 1998).

¶22        Joinder of Garcia for the temporary order proceedings may have been appropriate because the court did find that a portion of Pepe One was community property. *See* A.R.S. § 25-314(D) ("The court may join additional parties necessary for the exercise of its authority."). But joinder was not required. Garcia was not an indispensable party given that the only relief granted in the temporary order was spousal maintenance—an order enforceable only against Husband. *See Gerow*, 192 Ariz. at 14-15, ¶¶ 20-23. Accordingly, Garcia's interest in Pepe One was not before the court for consideration at the temporary order stage of the proceeding.

¶23        Appellants argue the family court "did not reconsider" its findings in the temporary order but, rather, used the temporary order to resolve the "remaining issues" incorporating the temporary findings into the final decree. We disagree. The family court used the temporary order as "the starting point" for some of the issues to be resolved in the decree. It then made new findings consistent with the ultimate resolution of the issue. For example, the court found that Appellants failed to rebut evidence of Appellants' relative contributions to Pepe One, noting "[i]f anything the evidence at trial confirm[ed] those findings" and that it had previously "grossly undervalued" Husband's goodwill in 2011.

¶24        Finally, the temporary order terminated when the family court entered the decree of dissolution. A.R.S. § 25-315(F)(4) (in dissolution proceedings temporary orders terminate when the final decree is entered);

Ariz. R. Fam. L. P. 47(M). Before trial, however, the family court had properly joined Garcia as a party. Garcia testified, offered evidence, and fully participated as a party in the proceedings. Accordingly, we reject Appellants' argument that the failure to join Garcia before issuing the temporary order requires us to vacate and remand the decree of dissolution.

### III. Division of Goodwill

**¶25** Appellants argue the family court erred in its division of the goodwill value of Pepe One and Pepe Two, because the goodwill valuation: (1) included Appellants' separate property, and (2) was unsupported by the evidence. Appellants further argue that the court's conclusion that some of restaurants' assets were concealed constituted "improper speculation." We reject these arguments.

**¶26** We review the family court's division of property for an abuse of discretion, but review de novo the characterization of the property because it is a conclusion of law. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000). The family court has broad discretion in its apportionment of community assets. *Gerow*, 192 Ariz. at 16 n.6, ¶ 28. We will not disturb the family court's factual findings unless clearly erroneous. *Hrudka v. Hrudka*, 186 Ariz. 84, 92 (App. 1995) *superseded by statute on other grounds*, *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014). "[G]oodwill is essentially reputation that will probably generate future business." *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 11 (App. 2012) (citations omitted). "[F]uture earning capacity *per se* is not goodwill" but "when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value." *Id.* (citations omitted).

**¶27** The family court found Wife and Husband did not intend for the assets of Pepe One to be Husband's separate property. Specifically, Wife did not know "with requisite specificity what the $10,000 would be used for." Further, Husband's goodwill existed at the time Wife petitioned for dissolution and was the most valuable asset of Pepe Two. Importantly, the family court determined Appellants had hidden the goodwill profits and there were additional issues regarding how much of those profits were depleted on Appellants' spending on vacations, gifts, and living expenses.

**¶28** In reaching its conclusion, the family court considered the evidence, including business records, tax records, bank statements, and the parties' testimony. Based on that evidence, the court concluded Appellants did not fully disclose all the business records, monies, and assets, for Pepe

One or Pepe Two. The court then determined the value and apportionment of Husband's goodwill. The family court also did not find Appellants' testimony regarding the profits and wages of the restaurants, after 2011, to be credible, a finding to which we defer. *See Gutierrez*, 193 Ariz. at 347, ¶ 13 (appellate court defers to family court's findings regarding witness credibility and what weight to give conflicting evidence).

**¶29**        Appellants admitted Wife had a community interest in Pepe One. Husband testified he took proceeds, $10,000, from the sale of a restaurant he owned with Wife and used the proceeds to open Pepe One. Wife's counsel impeached Husband's testimony that the $10,000 was separate property he received in exchange for deeding a residence (the James residence) to Wife, with his testimony from the 2011 temporary orders proceedings in which he testified Wife kept the money from the sale of the restaurant. Wife testified she knew Husband intended to open a restaurant, but did not know that he planned on opening a restaurant with Garcia, and that Husband provided the use of his name and recipes for Pepe One and Pepe Two. Garcia admitted Husband, as part-owner, helped devise the menu for Pepe One and they used the same recipes at Pepe Two, including Husband's specialty recipe from his mother.

**¶30**        Appellants do not specify what "separate" property they contend the court used in its goodwill valuation and, there is nothing in the record demonstrating the family court included Appellants' separate property in that calculation. Given the above facts, we also find no abuse of discretion in the family court's apportionment of goodwill. *See Wisner v. Wisner*, 129 Ariz. 333, 338 (App. 1981) (citations omitted) (there exists no "rigid and unvarying rule" for the family court's determination of the value of goodwill and "each case must be determined on its own facts and circumstances").

## IV.    Fraudulent Conveyance and Conversion

**¶31**        Appellants argue the family court's findings regarding fraudulent conveyance and conversion are unsupported by the evidence. They essentially argue that Wife waived her interest in Pepe One and, thus, there was insufficient evidence to support the family court's finding of fraudulent conveyance and conversion and to grant Wife an award of marital assets based on her community interest in Pepe One and Pepe Two. We review the evidence in the light most favorable to sustaining the family court's findings, and we will affirm if reasonable evidence supports the family court's findings. *See Gutierrez*, 193 Ariz. at 346, ¶ 5.

¶32        As an initial matter, Appellants' argument Wife waived her community interest in Pepe One is inconsistent with their position in the family court. As this is the only argument raised regarding their objection to Wife's conversion claim, we reject it. Here, Wife's requested relief for fraudulent conveyance was her share of the marital community. It was in this context, and in exercise of its discretionary power to divide the marital community equitably, that the family court considered, and found, a fraudulent conveyance, which it was entitled to do. *See Gerow*, 192 Ariz. at 17, ¶¶ 33-36; *Cf. Weaver v. Weaver*, 131 Ariz. 586 (1982). In dividing the community, the family court has the power to divide the community "equitably, though not necessarily in kind." A.R.S. § 25-318(A). Section 25-318(C) "explicitly allows the court to consider excessive or abnormal expenditures as well as destruction, concealment or fraudulent disposition of community property," *Neely v. Neely*, 115 Ariz. 47, 50 (App. 1977), which it did.

¶33        Reasonable evidence supports the family court's findings. As noted, Appellants admitted at trial Wife had a community interest in Pepe One. Further, they admit on appeal they were "remiss" in their disclosure and "tax records and bank records did not match up" for Pepe One and Pepe Two, from 2011 onward, but argue this alone is insufficient to support a finding of fraudulent conveyance because it is not a "badge of fraud." First, as this court has previously stated, "badges of fraud" for purposes of fraudulent conveyance, are merely "signs or marks of fraud from which intent may be inferred, and are not required elements." *Gerow*, 192 Ariz. at 17, ¶ 34.

¶34        Second, Appellants again misrepresent the family court's findings because the court considered a variety of factors that support its findings. Appellants testified Husband was an owner of Pepe One. The record further demonstrates that: Pepe One and Pepe Two were named after Husband; Husband was featured in the newspaper article as a co-owner (with Garcia) of Pepe One and Pepe Two; Pepe One and Pepe Two used his "family" recipes; Husband had access to both business checking accounts for Pepe One and Pepe Two; and Husband regularly paid himself without requiring Garcia's authorization. It is undisputed that Wife has

never received any interest in Pepe One or Pepe Two. Thus, reasonable evidence supports the family court's award to Wife.[7]

**V.      Paragraph Ten**

¶35      Appellants argue the decree of dissolution contains findings not found in the family court's under advisement ruling and ask this court to strike those findings from the decree. Specifically, they object to the finding in paragraph 10 of the decree that they "willfully executed [sic] to falsely represent the true ownership of the restaurants between the parties" and did so "with an intent to deny []Wife her property interest" (the "paragraph 10 findings").

¶36      Appellants claim on appeal that the family court failed to issue an order ruling on their objection raised below to the paragraph 10 findings. The record demonstrates, however, the family court did ultimately consider and overrule their objection. The family court entered its under advisement ruling and directed Wife to submit a form of decree and judgment for signature. Wife did so. Husband filed an "Objection to Form of Judg[ment]" objecting to the inclusion of paragraph 10 in the proposed form of judgment arguing "there were no findings of fact or conclusions of law" in the court's under advisement ruling that made "such a finding or conclusion of law." [8]

¶37      The family court subsequently entered the decree of dissolution. Appellants then filed a "Motion for Relief from Final Judgment" arguing, in part that the "form of judg[ment] remains at issue" because the family court had not yet ruled on their objection to the form of judgment. The family court denied the motion, a fact that Appellants acknowledged when they cited the denial of their motion for relief in the notice of appeal. Appellants, however, raise no argument regarding why the denial of that motion was in error and have waived the issue on appeal. *See* ARCAP 13(7)(A).

---

[7] For the reasons already discussed, we also reject Appellants' argument that the court's issuance of a lien against the Third Place Property exceeded its authority.

[8] Garcia motioned to join the motion.

**CONCLUSION**

**¶38** For the forgoing reasons, we affirm. We grant Wife's request for attorney fees and costs, A.R.S. § 25-324, contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA